```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF MINNESOTA
                   Civil No. 09-932(DSD/JJK)
```

Linda-Mary Mellon, formerly
known as Linda-Mary Sarafolean,

       Plaintiff,

v.                                              **ORDER**

Hospice Preferred Choice,
Inc. doing business as
AseraCare Hospice, HomeCare
Preferred Choice, Inc., doing
business as AseraCare, GGNSC
Administrative Services, LLC,
doing business as Golden Living,
and Lori Krech,

       Defendants.

    Patrick T. Tierney, Esq., Collins, Buckley, Sauntry & Haugh, 332 Minnesota Street, Suite W1100, St. Paul, MN 55101, counsel for plaintiff.

    Matthew E. Damon, Esq., Kari L. Hainey, Esq. and Nilan, Johnson, Lewis, 400 One Financial Plaza, 120 South Sixth Street, Minneapolis, MN 55402 and Charles M. Roesch, Esq., Ryan W. Green Esq., Faith C. Isenhath, Esq., Robert J. Reid, Esq. and Dinsmore & Shohl, 255 East Fifth Street, 19th Floor, Cincinnati, OH 45202, counsel for defendants.

This matter is before the court upon the motion for partial summary judgment by defendants Hospice Preferred Choice, Inc. d/b/a AseraCare Hospice (AseraCare), HomeCare Preferred Choice, Inc. d/b/a AseraCare (HomeCare), GGNSC Administrative Services, LLC d/b/a Golden Living (GGNSC), and Lori Krech (collectively, defendants). Defendants also move to dismiss GGNSC from this

action.[1] Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motions.

## BACKGROUND

This employment dispute arises out of AseraCare's termination of plaintiff Linda-Mary Mellon. Mellon began working at AseraCare as a home health aide (HHA) in July 2006. Mellon Dep. 63, 140, Jan. 5, 2010. AseraCare provides palliative care to terminally ill patients. Stewart Dep. 7, May 26, 2010. AseraCare HHAs follow individualized plans of care created for each patient by registered nurses. Id. at 9, 15-16. If an HHA cannot complete all plan-of-care duties, she must notify the nurse case manager, who in turn notifies the person in charge of scheduling. Id. at 16.

Initially, Mellon spent an hour with each patient. Mellon Dep. 175. Mellon claims that Krech, then-Director of Clinical Services, "at some point" limited patient-contact time to 30 minutes. Id. at 176. Thereafter, Mellon's caseload "became too heavy," and she worked through lunch breaks and from home in order to complete her paperwork. Id. at 140, 161. AseraCare policy requires HHAs to record their hours accurately and take scheduled breaks. Id. at 160. Mellon did not record the extra time on her timecard or in any other form because she was afraid she would be

---

[1] Plaintiff does not oppose the dismissal of GGNSC.

terminated for working overtime.  Id. at 137, 143.  No one at AseraCare told Mellon to refrain from recording overtime.  Id. at 139.

On February 14, 2007, Krech recommended a pay raise for Mellon, noting that Mellon was a "star employee."  Krech Dep. Ex. 9, Jan. 7, 2010.  On February 19, 2007, Krech gave Mellon a performance rating of "1: Exceeds all expectation[s]."  Id. Ex. 10. Krech was promoted to Executive Director and Carol Skare became Mellon's supervisor as the Director of Clinical Services.  Krech Dep. 7; Skare Dep. 37, Jan. 8, 2010.  Skare learned that Mellon was not taking scheduled breaks and informed Mellon she must do so. Skare Dep. 68.  Mellon told Skare that she would "do [her] best to take breaks, but they would have to decrease [her] client load for that to happen."  Mellon Dep. 164.

According to Mellon, she met with Skare and Barbara Roloff, Patient Care Coordinator, on March 12, 2007, and told them that she believed that she would be terminated for working overtime or talking about overtime.[2]  Id. at 151-52.  During the meeting, Mellon noticed that her "timecard was altered," and demanded a copy.  Id. at 166-67.  Mellon stated, "[y]ou can't do that.  That's against the law ... I was supposed to be notified and then I have to re-sign it agree or don't agree."  Id.  Mellon claims that Krech

---

[2] Skare and Roloff do not recall this meeting or Mellon complaining about an altered timecard.  Skare Dep. 93; Roloff Dep. 29, Jan. 8, 2010.

3

altered the timecard by removing an hour from her work day. Id. Mellon was not aware of any violation of law when she complained, and she based her statement on company policy. Id. at 170. Krech did not manage the timecards, but reviewed copies of completed timecards "for anything that jumped out ... [as] exorbitant" related to mileage or time. Krech Dep. 174.

On April 3, 2007, Skare directed Mellon to finish a visit with a client and move on to the next client. Skare Dep. 97-99. Mellon did not go to the next client. Mellon Dep. 184. On April 4, 2007, Skare and Roloff met with Mellon to discuss performance problems. During this meeting, AseraCare issue Mellon a written warning for (1) giving her cell phone number to patients and their families, (2) working outside the scope of an HHA, (3) changing her schedule without prior approval, (4) working overtime without prior approval, (5) not taking lunch breaks, (6) telling families that nurses would visit without nurse assessment, and (7) maintaining daily logs that did not match time-tracking summaries. Skare Dep. 64-68, Ex. 11. Mellon became upset, raised her voice and said "five, six, seven times that this is bullshit," and struck the door.[3] Mellon Dep. 200-02. After the meeting, Skare and Krech

---

[3] Mellon claims that she struck the door with her elbow. See Mellon Dep. 201-02. AseraCare claims that she "slammed her fist on to the door." Skare Dep. 73-74.

called Joe Pollina, Regional Director of Human Resources, and decided to terminate Mellon's employment. Skare Dep. 78-80. On April 5, 2007, Mellon was terminated. Mellon Dep. 208.

On April 2, 2009, Mellon filed this action in Minnesota state court, claiming violations of the Minnesota Fair Labor Standards Act (MN-FLSA), the Minnesota Whistleblower Act (MWA) and defamation. Defendants timely removed.[4] On July 30, 2010, Defendants moved for partial summary judgment on the MN-FLSA and MWA claims. The court now considers the motion.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)[5]; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

---

[4] The court has jurisdiction under 28 U.S.C. § 1332. AseraCare, HomeCare and GGNSC are Delaware corporations with their principal places of business in Arkansas. Krech is a citizen of Wisconsin. Mellon is a citizen of Minnesota. The amount in controversy exceeds $75,000, exclusive of interests and costs.

[5] The court cites the version of Rule 56 in force at the time of the motion and oral argument.

cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## I.   MN-FLSA

Mellon claims that AseraCare "pressured her into recording inaccurate time, altered her timecard, and failed to provide sufficient time for her to take rest breaks and lunch breaks and complete her assigned duties," in violation of MN-FLSA § 177.24 (payment of minimum wages), § 177.25 (compensation for overtime), § 177.253 (restroom breaks), § 177.254 (meal breaks) and § 177.30 (record keeping).[6]  See Compl. ¶¶ 56-58; Pl.'s Mem. Opp'n 3, 37.

---

[6] The complaint pleads violations of the MN-FLSA "including, but not limited to" §§ 177.24 and 177.30. See Compl. ¶ 56-58. Because "Sections 177.21 to 177.35 may be cited as the 'Minnesota Fair Labor Standards Act,'" the court construes Mellon's complaint to include violations of §§ 177.25, 177.253 and 177.254. See Minn. Stat. § 177.21.

Mellon first argues that AseraCare violated the overtime provision of MN-FLSA. "No employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed." Minn. Stat. § 177.25. In an action for unpaid overtime, the plaintiff has the burden to show that she "in fact performed work for which [s]he was improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946); see also Di Re v. Cent. Livestock Order Buying Co., 91 N.W.2d 453, 458 (Minn. 1958). Mellon has no recollection or documentation of the amount and extent of overtime she claims to have worked without compensation. See Mellon Dep. 147-48. Therefore, she produced no evidence from which the court can draw a "just and reasonable inference," and her claim for unpaid overtime compensation fails.

Mellon next argues that AseraCare violated the MN-FLSA by failing to allow time for meal or rest breaks. An employer must "permit each employee who is working for eight or more consecutive hours sufficient time to eat a meal," and allow restroom breaks. See Minn. Stat. §§ 177.253-.254. Mellon alleges that she had no time for breaks. This allegation, on its own, does not indicate that AseraCare violated the MN-FLSA. To the contrary, AseraCare

7

disciplined her for failing to take breaks and "counseled [her] on balancing a busy client schedule with the need to take company breaks." Compl. ¶ 21. Therefore, Mellon's claim under §§ 177.253-.254 fails.

Mellon also argues that Krech altered her timecard in violation of the MN-FLSA record-keeping provision. See Minn. Stat. § 177.30 (employers must "make and keep a record of" wages and hours worked by employees). In support, Mellon argues that Krech removed an hour from her timecard. However, Krech was not in charge of managing timecards or keeping records of employee hours, and there is no evidence that the altered timecard constituted the official record of Mellon's hours. Moreover, even if Krech altered the time card, there is no evidence that the alteration inaccurately reflected the time Mellon worked. Therefore, her record-keeping claim fails and summary judgment is warranted.[7]

## II. MWA

The court analyzes MWA claims under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Buytendorp v. Extendicare Health Servs., Inc., 498 F.3d 826, 834 (8th Cir. 2007); Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). Under McDonnell Douglas, a plaintiff must make a prima

---

[7] Mellon provided no facts to support a claim under § 177.24, as there are no allegations regarding payment of minimum wages. See Minn. Stat § 177.24. Accordingly, the court grants summary judgment on this claim.

8

facie showing of an MWA violation by proving that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two. See Eliserio v. United Steelworkers of Am. Local 310, 398 F.3d 1071, 1078-79 (8th Cir. 2005); Cokley, 623 N.W.2d at 630.

Any good faith report of a suspected violation of law constitutes statutorily protected conduct. Hedglin v. City of Willmar, 582 N.W.2d 897, 902 (Minn. 1998). Although "good faith" is generally a question of fact, the court may determine as a matter of law whether certain conduct constitutes a report under the statute. Rothmeier v. Inv. Advisers, Inc., 556 N.W.2d 590, 593 (Minn. Ct. App. 1996). A plaintiff can show a causal connection between protected activity and adverse employment action through circumstantial evidence that supports an inference of retaliatory motive. Pope v. ESA Servs., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005). Without more, a showing of temporal proximity between the protected activity and the adverse employment action fails to establish causation. Id.

### A. Time Card Alteration

Mellon first argues that she engaged in protected activity by reporting that Krech altered her timecard in violation of the MN-FLSA record-keeping provision. See Minn. Stat. § 177.30. AseraCare maintains that the timecard complaint is not protected conduct. The court agrees. While it is not necessary to identify

9

the specific law or rule that the employee suspects is violated, a report must implicate a state or federal law to constitute protected conduct. Abraham v. Cnty. of Hennepin, 639 N.W.2d 342, 354-55 (Minn. 2002). Mellon did not base her report on suspected violation of law, as she was not aware of any pertinent law when she complained. Mellon Dep. 169-70. Instead, the complaint was based on a company policy, which Mellon later discovered in the employee handbook. Id.; see Chial v. Sprint/United Mgmt. Co., 569 F.3d 850, 854 (8th Cir. 2009) (employee must "subjectively believe the conduct is unlawful at the time she makes the report and she must make the report because the conduct is unlawful"). Moreover, the facts as stated by Mellon do not "constitute a violation of law." Kratzer v. Welsh Cos., LLC, 771 N.W.2d 14, 22 (Minn. 2009) (citation omitted). As a result, the claim fails.

Moreover, even if Mellon's timecard complaint was based on a belief of illegality, it must be made "in good faith," meaning that it was "made for the purpose of blowing the whistle, i.e., to expose an illegality." Obst v. Microtron, Inc., 614 N.W.2d 196, 202 (Minn. 2000). The court looks to the reporter's purpose "at the time the report is made" to ensure that the purported whistle blowing "is in fact a report made for the purpose of exposing an illegality and not a vehicle, identified after the fact, to support a belated whistle-blowing claim." Id. Here, there is no evidence that Mellon reported the timecard alteration to expose any

10

illegality. Instead, Mellon testifies that her purpose for making the report was an interest in "standing up for [her]self to AseraCare after all those months." Mellon Dep. 169. Therefore, she fails to make a prima facie showing and summary judgment is warranted.

### B. Overtime and Breaks

Mellon next argues that she engaged in protected activity when she reported that she could not complete her duties without working overtime and through breaks, thereby alleging violations of Medicare regulations and the MN-FLSA. As an initial matter, Mellon's complaint did not include these claims, and she raised them for the first time in her memorandum opposing this motion. See generally Compl.; Pl.'s Mem. Opp'n. However, because the court construes the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every lawsuit," it considers the allegations on the merits.[8] See Fed. R. Civ. P. 1.

Mellon told Roloff that she worked from home and that she "had no time for anything, no time for family, no time for dinner" and that she was "exhausted" and "didn't know what to do about it." Mellon Dep. 136. There is no evidence that Mellon based this complaint on suspected violations of law. See Obst v. Microtron,

---

[8] On October 14, 2010, Mellon moved for leave to amend the complaint to add additional bases for the whistleblower claim. ECF No. 71. Magistrate Judge Keyes denied the motion without prejudice pending the court's disposition of the instant motion. See ECF No. 79.

11

Inc., 614 N.W.2d 196, 201-02 (Minn. 2000). To the contrary, Mellon's testimony shows that she was concerned for her well-being and complained because "company policy states that you're supposed to take a break." Mellon Dep. 160. Moreover, AseraCare, not Mellon, initiated discussions with Mellon about required breaks and record keeping. See Mellon Dep. 160 (defendants called her to a meeting "because [she] hadn't taken any breaks in nine months"); id at 163 (defendants told Mellon that her timecard didn't match the rest of her paperwork). In short, there is no evidence that Mellon engaged in protected activity by reporting violations or suspected violations of Medicare regulations or the MN-FLSA. Therefore, she fails to make a prima facie showing and summary judgment is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendants' motion for partial summary judgment and to dismiss GGNSC [ECF No. 36] is granted.

Dated:   January 10, 2011

s/David S. Doty  
David S. Doty, Judge  
United States District Court
